Chief Justice Roeertson
delivered the Opinion of the Court.
The Bank of the United States having, in November, 1820, obtained a judgment, for seven thousand dollars, with legal interest from February, 1820, against a private corporation styled ‘The Fayette paper manufacturing company,''’ and having had a fieri facias issued thereon, on which there was, early in 1821, a return of nulla bona—filed a bill in chancery against the stockholders of the company, in 1830, for subjecting their individual property, in proportion to the respective amounts of their several interests, in virtue of a provision in the charter of incorporation, in the following words: “Pro- “ vided however, that the estate and property of every “ individual shareholder, who holds or possesses stock in t‘ said corporation, shall at all times, be liable and subject *575 ■“ in law, in proportion to his or her interest therehi, td 44 pay and satisfy all debts and demands contracted by 44 said corporation daring the time he or they held stock 44 therein, upon a failure of the incorporate funds to dis-44 charge the same.”
The shareholders being liable, not in solido* but distributively, and being multitudinous; a court of eq. has jurisdiction ofthe bill of a creditor, to enforce the liability, against them collectively—as a court of law has of separate actions against them, severally.
Any limitation that would bar the actions at law, would bar the hill.
The provision (s?i;?rcr.,)subjecting the property ofthe stockholders, does notrendér their prop* erty liable to the levy of an ex’on On a judg’t or decree against the Corporation; nor subject them to any suit as parties directly bound by the contracts of the corporation. The liability of the shareholders is founded upon the eontractmade by the corporation, the return of nulla bona, showing the failure of the corporation to discharge it; and the act of inco'rporation--a statutory . liability ■which may be properly enforced, at law,' by an actionór actions, of debt. All actions' of debt grounded on any lending or contract without speciality, are barred, by the statute of Urn itations, in five years. But the statute (as often decided,) applies only to parol contracts, and only to contracts in fact—not to such obligations ¡.s are imposed, either expressly or constructively by mere law.
*575 The several defendants having, in their answers, relied on the statute of limitations, the Circuit Judge, on that ground, dismissed the bill absolutely; and the Bank has appealed, and now insists on a reversal of that decree.
As the judgment and return on the execution thereon entitled the Bank to demand the amount of its debt from the stockholders in their personal l’ight, and as they are liable, not in solido, but only distributively, in the ratio of their several interests, and are moreover mul.titutidinous, we have no doubt that the Circuit Court, sitting in equity, had jurisdiction over a joint bill, as filed, against all of them, concurrently with the cognizance of a court of law over separate actions against each of them, upon his sole and several liability.
And, though no statute of limitations applies, in terms, to suits in equity, yet there can be no doubt, in all cases of concurrent jurisdiction—excepting perhaps those of fraud—that Courts of Equity have, by analogy, adopted the legal limitation, and will inflexibly apply it justas it operates on actions at law.
And consequently, if, as argued, and as the Circuit Judge seems to have thought, the lapse of more than five yeai's from the return on the execution, which had been issued on the judgment against the corporation, would have barred any suits at law against each of the stockholders, this suit was also barred; and the decree was therefore right. Bat if, as argued on the other side, the statute would not have been available in common law actions, it is not applicable to this suit; and the decree therefore, is erroneous.
The charter, either subjects the individual properly of the stockholders to any judgment or decree against the corporation, or it imposes on the stockholders eventual personal liabilities, in the ratio of their respective interests in the company. The phraseology of the proviso is *576 far from being in this respect, as explicit and unambiguous' as it might have been. But, although we do not feel that the true constructive effect of the proviso is clear beyond any doubt, yet we are of the opinion that the more rational and consistent interpretation of it is; not that the individal property of the stockholders may, in any evbrit, be subjected to sale under an execution on a judgment or decree against the corporation, but that the stockholders themselves shall be personally liable for the corporate debts, and may, of course, be compelled to contribute to the payment of them according to a prescribed ratio of liability.' The converse interpretation would involve the incongruity of enforcing a judgment against the corporation, by levying an execution distributively, in distinct proportions, unascertained by the court, and unascertainable by the officer,' and On the separate estates of a multitude of persons who were neither parties to the judgment nor could be identified by the record.
A judg’t for money is not, stricti juris, a contract. Nor does a statute imposing a legal liability to pay a debt, create any contract: yet, both are evidences of indebtedness, of the highest character; and neither is within the statute of limitations-
^tuteT'evidence of a debt or de“theVayettepaper manufacturing co.” is equally evidence of the liability of the shareholders individually, as guarantors of the debt or demand. It is at once evidence of the direct and immediate liability of the one, and of the consequential liability of the other. As long as the corporation remains bound, its obligation is binding, als©, upon the shareholders; & no limitation which would not bar an action against the corporation, would be available as a bar to a suit against the shareholders.
*576 Then, the obligation imposed oh the stockholders being thus altogether personal and consequential, a suit could riot have been maintained against them on the bond given in the corporate name, and their only liability therefore, is founded on the statute of incorporation, and on thd judgment against the corporation and the official return of nulla bona which had been made upon an execution thereon. And therefore, their counsel assuming that their liability is collateral, and results only from an implied promise, insist that assumpsit would have been the appropriate legal remedy for enforcing their liability, had any suit at law been brought against them.
But we can neither admit this assumption, nor acknowledge the conclusiveness of the deduction thus drawn from it.
The statute of limitations of this State, like that of James the first of England, provides, among other things, that all actions of debt “grounded upon any lending or “ contract without specialty,” shall be brought “within five « years after the cause of such action or suit, and not J 44 after*
jn England, as well as in this country, it has been fre *577 quently decided, that the foregoing provision respecting the action of debt applies to only such actions on parol contracts; and also, that it applies to such contracts on_ly as are contracts in fact, and not to such obligations, quasi ex contractu, as are imposed, either expressly or constructively, by mere law. And consequently it has been settled, that an action of debt for an escape is not within the statute of limitations, because it is founded, not on any contract in fact, but on the legal liability imposed by the statutes of Westminster 2. and 1 R. 2. c. 12, which gave an action of debt against the sheriff .or gaoler, to recover the debt for which the prisoner had been committed to his custody in execution of a judgment; and therefore, the suit was founded on the statute alone, which is demeed, in effect, a specialty. Jones vs. Pope, 1 Saunders, 36-7-8, and notes; Hodsden vs. Harridge, 2 Ib. 64—5, and notes, and cases there cited; Pease vs. Howard, 14 Johnson's Reps. 479, and Bullard vs. Bell, 1 Mason's Reps. 243. These cases abundantly support all of the foregoing positions.
Supposing that assumpsit might be maintained up on the liability which the act imposes upon share holders: still, as the action of debt may be maintained, the bar would not be applied in a court of Eq. as the bar is only applied there, when no suit can be main tained at law.
In the case in 14 Johnson, supra, the Court decided that the statute of limitations did not apply to an action of debt on a domestic judgment of a court not of record, because the judgment was conclusive evidence of liability, and the action thereon was not upon a parol contract, or a contract in fact, but was founded on the legal obligation evidenced by the conclusive judgment, and therefore imposed by law.
A statute of New Hampshire, incorporating a Bank, provided that, if the corporation should ever “refuse or “ neglect to pay any of their bills when presented in the u usual way, the original stockholders, successors &c. u shall, in their private capacities, be jointly and sever-u ally liable to the holder 8tc."
And, in the case of Bullard vs. Bell, supra, decided in the United States Circuit Court for New Hampshire, in 1817, Justice Story, of the Supreme Court of the United States, determined that debt was the appropriate remedy on the foregoing provision in the charter of the Bank, for enforcing the statutory liability of a stockholder to a holder of one of its dishonered bills; and also decided, ‘ *578 that the case was not within the statute of limitations* for reasons similar to those given in the case of Pease vs. Howard, in New York. The case was taken to theSupreme Court of the United States, as we are inclined to-Relieve; but if eyer decided by that tribunal, the decision has not been reported.
The statutes of limitations in both New York and New Hampshire were, as to the action of debt upon contract, just like that of James I. and of this State; and therefore,- the two cases in Johnson's and Mason's Reports are entitled to much consideration in this case. But the reasons which sustain the doctrines of those cases are far more imposing than the mere judicial opinions of the distinguished jurists who decided them.
A judgment for money, is not, slricii juris, a contract, but it imposes a civil liability, and is even 'more conclusive evidence of a debt than any contract by specialty can be; and therefore, an action upon it is not embraced by the statute of limitations. A statute imposing a legal liability to pay a debt does not create a contract,, nor is it either of the nature of a contract, or evidence of an actual agreement to pay; but it is, at least, as high evidence of indebtedness as any specially can be. And therefore and because it is not a contract in fact, action of debt to enforce the obligation it imposes, is not within the application or the policy of the statute of limitations.
But in this case, there is more than the mere statutory duty. The indebtedness of the corporation, and consequently, that of the stockholders, was evidenced by a bond; on that bond there was a judgment against the corporation, and a sheriff made a return of nulla bona on an execution which had been issued on that judgment. All these constitute the evidence of the obligation which rests on the stockholders, and on all those bases this suit is founded.
The charter intended to make all the debts of the corporation the debts also of the natural persons of whom it was composed; and it intended that their contingent liability should exist as long as its direct obligations. And therefore, that which is evidence of its indebtedness is *579 equally evidence of their consequential liability for that indebtedness; and is as conclusive and effectual against them as against it. The charter associated them with the corporation in liability, in the character of guarantors, and therefore,-their responsibilty in this case, does not arise from any parol or implied contract to pay, but results from the contract of their representative who had legal authority to bind them, and from the charter bindi ing them to guaranty payment, and from the judgment on that contract, and the official return on the execution which was issued upon it, against the corporation.
Had the proviso in the charter imposed a liability in rem only, there could have been no doubt that it might be enforced against the estates of the stockholders as long as the judgment against the corporation could be legally enforced against the corporate property itself. And surely, the fact that they are bound in personam and in rem cannot make their obligation less effectual or en. during. And, of course, they cannot be protected by the statute of limitations when the corporation itself could not plead it.
This case is much stronger in the obligation on which it rests than, either that of Ballard vs. Bell, or Pease vs. Howard, in one of which a statute, and in the other a judgment of a magistrate whose court w-as not one of record, was the only foundation of the action in which the statute of limitations was not allowed to prevail.
In this case the charter authorized the corporation to give the bond, and made it when given, obligatory immediately on the corporate body, and eventually and contingently on the stockholders, who are as much bound on the happening of the implied contingency, as they would have been, in the first instance, had the charter declared that they should be so far deemed obligors in bonds given in their corporate name,'as to be liable to suit on those bonds; and therefore, as the law makes them personally liable for debts contracted in their corporate name such debts may be enforced against them, as long as the corporation is liable; and of course, the bond and the judgment in this case, are as effectual against the *580 stockholders, on the return of nulla bona, as to the corporation, as- they are against the corporation itself.
In consequence of the bond and the judgmentupon it, assumpsit would not perhaps have been maintainable. But even if it might have been, the statute of limitations should not apply to the present suit; because, as debt was maintainable on the charter, the judgment, and the sheriff’s return, and could not have been barred by any statutory limitation, there can be no constructive bar in equity; for the rule of analogy in Courts of Equity, is that, when no suit at law could be maintained in consequence of lapse of time, a bill in chancery should be also barred.
As, then, an action of debt against each of the stockholders separately would have been an appropriate, perhaps, the only maintainable remedy at law; and as such actions could not have been barred by the statute of limitations, this suit cannot be barred by the pleas of limitation.
Wherefoi’e, it is decreed and ordered, that the decree of the Circuit Court be, and the same is, reversed, and the cause remanded.